UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
LISANDRA A.,

                              Plaintiff,          DECISION AND ORDER
                                                  7:20-CV-04796-GRJ

              v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

        In October of 2015, Plaintiff Lisandra A.[1] applied for Disability

Insurance Benefits under the Social Security Act. The Commissioner of

Social Security denied the application.  Plaintiff, represented by Olinsky

Law Group, Howard D. Olinsky, Esq., of counsel, commenced this action

seeking judicial review of the Commissioner's denial of benefits under 42

U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction

of a United States Magistrate Judge. (Docket No. 12, 13).

        This case was referred to the undersigned on January 26, 2022.

Presently pending are the parties' motions for Judgment on the Pleadings

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 19,

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

21). For the following reasons, Plaintiff's motion is denied, the

Commissioner's motion is granted, and this case is dismissed.

## I.  BACKGROUND

### A.   Administrative Proceedings

Plaintiff applied for benefits on October 28, 2015, alleging disability

beginning May 19, 2015. (T at 83, 264).[2]  Plaintiff's application was denied

initially and on reconsideration.  She requested a hearing before an

Administrative Law Judge ("ALJ").  A hearing was held on November 27,

2018, before ALJ Deanna Sokolski. (T at 30). Plaintiff appeared with an

attorney and testified. (T at 36-65). The ALJ also received testimony from

Lashonne Alexander, a vocational expert. (T at 65-73).  During the hearing

Plaintiff amended her application to seek a closed period of benefits to

cover the period between May 19, 2015 (the alleged onset date) and

December 1, 2017 (when she returned to work). (T at 10).

### B.   ALJ's Decision

On March 13, 2019, the ALJ issued a decision denying the

application for benefits. (T at 7-28).  The ALJ found that Plaintiff had not

engaged in substantial gainful activity since May 19, 2015 (the alleged

onset date) and met the insured status requirements of the Social Security

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 16

Act through December 31, 2021 (the date last insured). (T at 12-13).  The ALJ concluded that Plaintiff's degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; cervical radiculopathy; bilateral upper extremity radiculopathy; bilateral carpal tunnel syndrome impingement syndrome in right shoulder; and bilateral osteoarthritis of knee and muscle strain were severe impairments as defined under the Act. (T at 13).

At step three of the sequential analysis the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 14).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: she can never climb ladders, ropes, or scaffolds; she can frequently balance; occasionally climb ramps and stairs; occasionally kneel, crouch, and crawl, but no overhead reaching with the right dominant upper extremity; no pushing or pulling or operating hand controls with the right dominant upper extremity; she can frequently handle and finger with the bilateral upper extremities; and she must avoid

all exposure to workplace hazards such as unprotected heights and dangerous moving machinery. (T at 14-15).

The ALJ concluded that Plaintiff could not perform her past relevant work as a porter, guard, parks groundskeeper, or customer service/floor attendant. (T at 21).

However, considering Plaintiff's age (44 on the alleged onset date), education (limited, but able to communicate in English), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 21). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between May 19, 2015 (the alleged onset date) and March 18, 2019 (the date of the ALJ's decision). (T at 21-22). On April 21, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

C.   *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on June 23, 2020. (Docket No. 1). On April 28, 2021, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket No. 19, 20). The Commissioner interposed a cross-motion

for judgment on the pleadings, supported by a memorandum of law, on June 4, 2021. (Docket No. 21, 22).  On June 25, 2021, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 23).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire

record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

See Rolon v. Commissioner of Soc. Sec., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); see also 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. See Green-Younger v.

Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. See Butts v. Barnhart, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises three (3) main arguments in support of her request for reversal of the ALJ's decision.  First, she challenges the ALJ's Listings analysis.  Second, Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed.  Third, she contends that the ALJ erred in discounting her credibility.  This Court will address each argument in turn.

### A.    Listings Analysis

At step three of the sequential evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in Appendix 1 of the Regulations (the "Listings"). See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets or equals a listed impairment, she is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986).

"The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing." *Henry v. Astrue*, 32 F. Supp. 3d 170, 182 (N.D.N.Y. 2012) (citing *Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y.2006)).

Here, Plaintiff argues that she has an impairment or combination of impairments that meets the requirements of Listing 1.04A.

Listing 1.04 (A) requires a spinal disorder such as a herniated disc, arthritis, degenerative disc disease, or a vertebral fracture, along with:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04(A). *See Scully v. Berryhill*, 282 F. Supp. 3d 628, 635 (S.D.N.Y. 2017).

The ALJ recognized that Plaintiff had lumbar and cervical degenerative disc disease but found that this impairment did not meet or medically equal Listing 1.04 (A) because the imaging studies did not "demonstrate compromise of a nerve root or the spinal cord …." (T at 15). In addition, the ALJ concluded that there was "no evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." (T at 15).

Plaintiff points to evidence that demonstrates compromise of the nerve root.  According to an August 2015 report, an "electrodiagnostic study reveal[ed] evidence of right C5-C6 cervical radiculopathy." (T at 430). The ALJ referenced this report (T at 15), but apparently believed that a finding of cervical radiculopathy contradicted a claim of nerve root compression. The opposite is true. *See Lopez v. Kijakazi*, No. 20-cv-07912 (MKV) (SDA), No. 20-cv-07912, 2021 U.S. Dist. LEXIS 240013, at *3 n.3 (S.D.N.Y. Dec. 14, 2021)("Cervical radiculopathy is a disease of the nerve roots in the cervical spine often caused by compression of nerve roots and often accompanied by neck or shoulder pain.")(quotation omitted); *Blais v. Astrue,* No. 08-CV-01223 (DNH), 2010 U.S. Dist. LEXIS 57234, at *16 (N.D.N.Y. May 13, 2010)(noting that "findings of radiculopathy further suggest nerve root compression")*; Norman v. Astrue*, 912 F. Supp. 2d 33, 78-79 (S.D.N.Y. 2012)( finding that cervical and lumbar radiculopathy evidenced nerve root compression); *Justina O. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00177 (JLS), 2021 U.S. Dist. LEXIS 139993, at *16 (W.D.N.Y. July 26, 2021)("Radiculopathy alone may establish compromise of a nerve root.").

Moreover, significant additional evidence in the record demonstrated nerve root compression, contrary to the ALJ's findings. For example, an

August 2015 MRI of the cervical spine revealed a "massive disc herniation associated with C5-6 which has a midline component at the disc level that causes compression deformity of the cord with central spinal stenosis of a moderate severity." (T at 453). Several reports from physicians describing the MRI results contained their assessment of cord compression. (T at 438, 454, 522, 970, 1094).

Although the Commissioner does not expressly concede error, she offers no substantive defense for the ALJ's conclusion that the imaging studies did not "demonstrate compromise of a nerve root or the spinal cord …." (T at 15). Rather, the Commissioner argues (implicitly) that the error was harmless because Plaintiff did not exhibit the requisite muscle atrophy or weakness to meet Listing 1.04 (A). The Court agrees.

Dr. Jeffrey Passick performed an orthopedic examination in September of 2015 and found full muscle strength and noted no atrophy. (T at 441). An examination note from Dr. Joseph DeMattia in June of 2015 evidences that Plaintiff had no weakness. (T at 445). Dr. Allen Meisel performed a consultative orthopedic examination in December of 2015 and found full strength and no muscle atrophy. (T at 738). Other clinical examination notes document somewhat diminished (4/5) motor strength in the upper extremities. (T at 555, 566, 715, 1093, 1352).

Occasional reports of slightly diminished motor strength, however, are insufficient to satisfy Listing 1.04 (A)'s requirement of "motor loss (atrophy with associated muscle weakness or muscle weakness)." *See Killings v. Comm'r of Soc. Sec.*, 15 Civ. 8092, 2016 U.S. Dist. LEXIS 128944, at *34-35 (S.D.N.Y. Sep. 15, 2016)("At its worst, the plaintiff's motor strength was reported as "slightly diminished" or rated at "4/5." Therefore, the ALJ's finding that the plaintiff's spinal impairment did not meet Listing 1.04 is supported by substantial evidence.")(internal citations omitted); *Delgado v. Comm'r of Soc. Sec.*, No. 18cv3960 (GBD) (DF), 2020 U.S. Dist. LEXIS 10901, at *41 (S.D.N.Y. Jan. 21, 2020)("Although Section 1.04 does not contain an express severity standard, it seems clear that something more than a slight loss of function is required to satisfy its criteria."); *Claymore v. Astrue*, 519 F. App'x 36, 37 (2d Cir. 2013) (affirming ALJ's finding that Listing 1.04 requirements were not satisfied where "sensation was only slightly diminished to touch over the left distal leg"); *see also Aguirre v. Saul*, 20 Civ. 4648, 2021 U.S. Dist. LEXIS 203693, at *16 (S.D.N.Y. Oct. 22, 2021)(collecting cases).

Plaintiff says that the ALJ's Listings analysis cannot be sustained because it was premised solely upon the ALJ's incorrect reading of the imaging studies.  A close examination of the ALJ's decision shows that is

not the case. In addition to the finding about the lack of nerve root compression (which was error) the ALJ expressly found that "there was no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." (T at 15).  Thus, the ALJ concluded that the Plaintiff did not meet Listing 1.04(A) because (even if there was nerve root compression) there was no corresponding evidence of atrophy with associated muscle weakness. Both nerve root compression with associated atrophy and muscle weakness are required to meet Listing 1.04(A).

Accordingly, for the reasons discussed above, the ALJ's conclusion that the requirements of Listing 1.04 (A) were not satisfied is supported by substantial evidence. This aspect of the ALJ's decision must be sustained under the deferential standard of review applicable here. *See Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)("The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.")(emphasis in original).

*B.     Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

A "treating physician" is the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

An opinion from a treating physician is afforded controlling weight as to the nature and severity of an impairment, provided the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

However, treating physician opinions are not always dispositive.  For example, an opinion will not be afforded controlling weight if it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

To determine how much weight a treating physician's opinion should be given, the ALJ considers the "*Burgess* factors" identified by the Second Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019)(following *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

The *Burgess* factors are also applied to the opinions of non-treating physicians, "with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant." *McGinley v. Berryhill*, No. 17 Civ. 2182, 2018 WL 4212037, at *12 (S.D.N.Y. July 30, 2018). A consultative physician's opinion may constitute substantial evidence. *See Petrie v. Astrue*, 412 F. Appx 401, 406 (2d Cir. 2011).

In the present case, Dr. Allen Meisel performed a consultative orthopedic examination in December of 2015. Dr. Meisel diagnosed cervical disease with spinal stenosis (awaiting surgery) and lumbar back pain secondary to herniated discs. (T at 738). He characterized Plaintiff's prognosis as "fair." (T at 738). Dr. Meisel opined that Plaintiff had marked limitations in standing, walking, climbing stairs, bending, and kneeling; as

well as moderate limitation with respect to lifting, carrying, and handling objects. (T at 738).

The ALJ afforded "partial weight" to Dr. Meisel's opinion.  The ALJ credited Dr. Meisel's conclusion that Plaintiff had a moderate limitation with respect to lifting and carrying. (T at 19).  However, the ALJ did not accept the marked limitations that Dr. Meisel assessed related to Plaintiff's ability to stand, walk, climb stairs, bend, and kneel. (T at 19).  The ALJ found these limitations inconsistent with Dr. Meisel's own clinical examination results, which showed, *inter alia*, full strength, normal gait, and the ability to rise from a chair without difficulty. (T at 19, 737-38).

This Court finds the ALJ's consideration of Dr. Meisel's opinion supported by substantial evidence.  An ALJ may discount a medical opinion that is "internally inconsistent with [the physician's] own, contemporaneous examination findings." *Donofrio v. Saul*, No. 18 Civ. 9968, 2020 U.S. Dist. LEXIS 54407, at *25 (S.D.N.Y. Mar. 27, 2020); *see also Calero v. Colvin*, No. 16 Civ. 6582, 2017 U.S. Dist. LEXIS 157262, at *17-18 (S.D.N.Y. Sep. 26, 2017)("The ALJ need not fully credit the evaluations of every treating or consulting physician. Grounds for an ALJ to give limited weight to a physician's conclusions include: inconsistencies with the rest of the administrative record and internal inconsistencies.").

In addition, while the ALJ could have been more expansive in explaining her decision to discount Dr. Meisel's opinion, it is evident the ALJ reviewed the entire record when concluding that the consultative examiner's assessment was only entitled to partial weight.

For example, contrary to Dr. Meisel's finding of marked limitation in standing and walking, the record generally documented full or only slight diminished muscle strength (T at 442, 445, 555, 566, 715, 1352) and the ability to ambulate without assistance. (T at 442, 445, 737, 1029, 1093, 1178). Moreover, Plaintiff's ability to return to work at an occupation (home health aide) that requires walking and standing provides an additional reason to question Dr. Meisel's assessment of marked limitation in standing and walking. This is particularly so since Plaintiff testified that her return to work was not motivated by any change (or improvement) in her condition. (T at 37-38, 50). Further, Plaintiff's treating physician, Dr. Andrew Cordiale, opined that she should refrain from "heavy lifting, carrying or bending …," but did not assess any limitation related to standing or walking. (T at 716).

It is the role of the Commissioner, and not this Court, to resolve conflicts in the evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). The ALJ may reach a determination that "does not perfectly

correspond with any of the opinions of medical sources," provided the ALJ's overall assessment is supported by substantial evidence and consistent with applicable law. *See Trepanier v. Comm'r of SSA*, 752 Fed. Appx. 75, 79 (2d Cir. 2018).

The ALJ's decision to discount Dr. Meisel's opinion must be sustained under the deferential standard of review applicable here. *See Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008)("The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision.")(citation and internal quotation marks omitted).

C.    *Credibility*

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other

evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.

This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's credibility, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows: In December of 2017, she returned to work as a home health aide. (T at 37).  She cooks and performs light cleaning for a client.  The job involves lifting no more

than 20 pounds. (T at 38). A 2015 work injury causes persistent pain (particularly connected with the right shoulder) and depression. (T at 44-46).  She has difficulty walking and "sometimes" uses a cane. (T at 47). Prolonged sitting is also painful. (T at 47).  She experiences radiating numbness in her right shoulder and difficulty reaching. (T at 47-48).  Pain prevents her from sweeping and mopping and interferes with personal hygiene. (T at 48).  She returned to work after her workers' compensation benefits were exhausted, although her physical condition had not changed. (T at 50-51).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 16-17).

For the following reasons, this Court concludes the ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence and consistent with applicable law.

First, the ALJ found Plaintiff's complaints of disabling pain and limitation not fully consistent with the treatment record, which the ALJ reasonably read as documenting slightly diminished or full motor strength

and the ability to ambulate without assistance.  (T at 17-19, 442, 445, 555, 566, 715, 737, 1029, 1093, 1178).

An ALJ has the discretion to discount a claimant's subjective complaints where, as here, those complaints can be considered inconsistent with the overall clinical assessments and treatment notes. *See Kuchenmeister v. Berryhill*, No. 16 Civ. 7975, 2018 U.S. Dist. LEXIS 9750, at *59 (S.D.N.Y. Jan. 19, 2018); *Rodriguez v. Colvin*, No. 15 Civ. 6350, 2016 U.S. Dist. LEXIS 159003, at *68-69 (S.D.N.Y. Nov. 14, 2016); *Robles v. Colvin*, No. 16CV1557 (KMK) (LMS), 2019 U.S. Dist. LEXIS 62118, at *51 (S.D.N.Y. Apr. 9, 2019).

Second, the ALJ reasonably found Plaintiff's complaints of disabling pain and limitation inconsistent with her decision to return to work despite her testimony that her physical condition had not changed. (T at 37-38, 50).

A claimant's "normal range of activities" may be relied upon as evidence that the claimant "retains a greater functional capacity than alleged." *Smoker v. Saul*, No. 19-CV-1539 (AT) (JLC), 2020 U.S. Dist. LEXIS 80836, at *53 (S.D.N.Y. May 7, 2020)(citation omitted).  In particular, "[e]vidence that a plaintiff is capable of participating in various activities of daily living despite allegations of severe pain can support a determination that a plaintiff can perform sedentary work." *Niven v. Barnhar*t, 03 Civ. 9359

(DLC), 2004 U.S. Dist. LEXIS 17337, at *19 (S.D.N.Y. Sept. 1, 2004)(citing

*Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980)); *see also Rutkowski v.*

*Astrue*, 368 Fed. App'x 226, 230 (2d Cir. 2010)(affirming ALJ's credibility

determination in light of "substantial evidence … showing that [claimant]

was relatively 'mobile and functional,' and that … allegations of disability

contradicted the broader evidence"); *Ashby v. Astrue*, No. 11 Civ. 02010,

2012 U.S. Dist. LEXIS 89135, at *43-44 (S.D.N.Y. Mar. 27, 2012)("As it

appears that, in making his credibility assessment, the ALJ appropriately

considered Plaintiff's ability to engage in certain daily activities as one

factor, among others suggested by the regulations, this Court finds no legal

error in this aspect of the ALJ's analysis.").

     Here, the ALJ reasonably considered Plaintiff's ability to maintain

employment as a home health aide when assessing the credibility of her

subjective complaints of disabling pain and limitation.

     There is no question that Plaintiff suffers from pain and limitation.

The ALJ did not dismiss Plaintiff's subjective complaints and, in fact, found

her limited to a reduced range of sedentary work. (T at 15-16).  However,

"disability requires more than mere inability to work without pain." *Dumas v.*

*Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). "Otherwise, eligibility for

disability benefits would take on new meaning." *Id.*

Here, the ALJ offered specific support for the decision to discount Plaintiff's subjective complaints, including a reasonable reading of the treatment notes and clinical assessments and proper consideration of the activities of daily living.  This is sufficient to sustain the disability determination under the deferential standard of review applicable here. *See Stanton v. Astrue,* 370 Fed App'x 231, 234 (2d Cir. 2010)(stating that courts will not "second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling"); *Hilliard v. Colvin*, No. 13 Civ. 1942, 2013 U.S. Dist. LEXIS 156653, at *48 (S.D.N.Y. Oct. 31, 2013)(finding that ALJ "met his burden in finding [subjective] claims not entirely credible because [claimant] remains functional in terms of activities of daily living and the objective medical evidence fails to support her claims of total disability based on pain").

## IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED**:

1. Plaintiff's Motion for Judgment on the Pleadings (Docket No. 19) is **DENIED**.

2. The Commissioner's Motion for Judgment on the Pleadings (Docket No. 21) is **GRANTED**, and

3.     The Clerk is directed to enter final judgment in favor of the

Commissioner and close this case.


Dated: February 22, 2022              *s/Gary R. Jones*
                                      GARY R. JONES
                                      United States Magistrate Judge